IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**DOYLE BYRNES**,

                Plaintiff,

vs.                                                 Civil Action No. 10-2690-EFM-DJW

**JOHNSON COUNTY COMMUNITY COLLEGE**,            ORAL ARGUMENT REQUESTED

and

**DR. CLARISSA CRAIG**
in her individual and official capacities

and

**MS. JEANNE WALSH**
in her individual and official capacities

and

**MS. AMBER DELPHIA**
in her individual and official capacities

and

**DR. MARILYN RHINEHART**
in her individual and official capacities

and

**DR. DENNIS DAY**
In his individual and official capacities

                Defendants.

### SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW, Plaintiff Doyle Byrnes respectfully submits this memorandum of points and authorities in support of her Motion for Temporary Restraining Order and Preliminary Injunction.

**Preliminary Statement**

On November 11, 2010, Plaintiff Doyle Byrnes was dismissed from the Johnson County Community College Nursing Program (hereinafter "JCCC" or "JCCC Nursing"). Prior to her dismissal, Ms. Byrnes was on pace to graduate in May of 2011 and had been in good academic standing with the college since her initial enrollment in the fall of 2006. Her dismissal from JCCC Nursing came only one month before she was scheduled to take her final exams. Although she was dismissed from JCCC Nursing, Ms. Byrnes kept up on her reading assignments and listened to classroom lectures recorded by her classmates. After her dismissal, Ms. Byrnes requested to take her exams notwithstanding her dismissal so that in the event her dismissal was overturned on appeal, she would not be irreparably harmed. That request was denied by the director of JCCC Nursing, and ratified by the Dean of Health and Wellness. Plaintiff Byrnes has an actionable case against JCCC for violating her procedural and substantive due process rights under the Fourteenth Amendment, for breach of contract, and for negligent misrepresentation. Her dismissal from JCCC Nursing came before an opportunity to be heard and before she was given a chance to appeal. A court ordered injunction is the only way to prevent irreparable injury to the Plaintiff.

It is also worth noting that time is of the essence for the issuance of relief by the Court. The Spring Semester at JCCC Nursing commences on January 19, 2011, thus to prevent plaintiff from being further harmed, the temporary restraining order and preliminary injunction must issue prior to January 19, 2011.

## **Standard For District Court to Issue Temporary Restraining Order and Preliminary Injunction**

Federal Rule of Civil Procedure 65 establishes the relevant procedures for the granting of a preliminary injunction and a temporary restraining order. Before a preliminary injunction may be issued, notice must be given to the adverse party. Rule 65(a)(1) requires notice to the adverse party before a preliminary injunction is issued. *See* 13 MOORE'S FEDERAL PRACTICE, § 65.21 (Matthew Bender 3d ed.). Under the general notice provision of Rule 6(c)(1), at least 5 days notice of a motion for preliminary injunction is required. *See* 1 Moore's Federal Rules Pamphlet § 65.3 (Matthew Bender). However, the court has discretion to shorten the notice period for a hearing on injunction. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1153 (10th Circ. 2001).

The standard is the same for granting a preliminary injunction and a temporary restraining order. *Winnebago Tribe of Nebraska v. Stovall*, 205 F. Supp. 2d 1217, 1221 (D. Kan. 2002). A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal. In order for a party to be entitled to a preliminary injunction, that party must show: (1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Nova Health Sys. v. Edmondson,* 460 F.3d 1295, 1298 (10th Cir. 2006) (internal citations omitted).

The Tenth Circuit uses a liberal standard for the "likelihood of success on the merits" requirement. "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be

3

enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (1980).

In this case, a temporary restraining order and a preliminary injunction are both necessary and appropriate because Plaintiff Byrnes has a strong likelihood of prevailing on her claims, and would suffer imminent and irreparable harm if such interim relief were to be denied. Plaintiff's forced absence from her nursing education since November 11, 2010 can still be rectified by the prompt action of this Court. However, the Spring Semester of JCCC Nursing commences January 19, 2011, and therefore to avoid additional harm, Plaintiff requests a prompt hearing and the Order of this Court allowing her to resume instruction on or before January 19, 2011. Furthermore, Defendant JCCC will not be harmed by the issuance of the temporary restraining order and preliminary injunction, and this relief will best serve the public interest.

## **ARGUMENT**

### I. **Plaintiff Has a Substantial Likelihood of Success on the Merits**

#### A. **Plaintiff Owns a Constitutionally Protectable Property Interest In Her Continuing Education and a Liberty Right in Her Good Name.**

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569-70 (1972).

Property interests, as the Supreme Court has frequently observed, are created and defined by state law and may encompass contractual provisions or mutual implied understandings. *Jago*

4

*v. Van Curen,* 454 U.S. 14, 18 (1981); *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601-02 (1972). Plaintiff Byrnes has a recognized property right in her post-secondary nursing education. *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir.1975); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986)**.** Although specifically involving public high school students, the United States Supreme Court, too, has held that, once provided, public education becomes "a property interest which may be protected by the Due Process Clause." *Goss v. Lopez,* 419 U.S. 565, 574 (1975). The holding of *Goss* was expanded by the 10th Circuit to include institutions of higher learning. *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975). Specifically, the 10th Circuit noted: "[w]e have no difficulty in concluding that in light of *Goss*…where the Supreme Court recognized a property right in public school students, that certainly such a right must be recognized to have vested…in that she paid a specific, separate fee for enrollment and attendance at the Gordon Cooper School.  The cause is, then, cognizable under the Civil Rights Act." *Id.* Therefore, Plaintiff Byrnes has a recognized property right in her nursing education.

Deprivations of liberty interests are also actionable under the Fourteenth Amendment. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). In such a case, due process would accord the accused of an opportunity to refute the charge before University officials. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). A strong case for asserting a liberty interest arises in connection with an expulsion. In *Donohue v. Baker*, for example, the federal district court observed: "[i]t is well settled that an expulsion from college is a stigmatizing event which implicates a student's protected liberty interest." 976 F. Supp. 136 (D.N.Y. 1997).

## B. Plaintiff's Dismissal Was Disciplinary Rather Than Academic

JCCC maintains that its dismissal of Plaintiff Byrnes was academic in nature, undoubtedly to secure greater judicial deference. "When judges are asked to review the substance of a genuinely academic decision…they show great respect for the faculty's professional judgment. *Regents of the Univ. of Mich. V. Ewing*, 474 U.S. 214, 255 (1985). As the Court indicated in *Ewing*, however, the notion of judicial deference to academic decisions loses force when, as here, the decision maker is "accused of concealing nonacademic or constitutionally impermissible reasons" for its actions. *Gossett v. Oklahoma ex rel. Board of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) (*citing id.*). In this case, JCCC is concealing a nonacademic dismissal as that of an academic dismissal. When Plaintiff Byrnes was sent written notice of her dismissal from JCCC Nursing, the dismissal letter cited Plaintiff Byrnes "lack of professional behavior which was considered a 'disruption.'" The Supreme Court in *Board of Curators of Univ. of Missouri v. Horowitz* noted that disciplinary proceedings include those "in which a teacher must decide whether to punish a student for disruptive or insubordinate behavior." 435 U.S. 78, 90 (1978). Thus, JCCC's dismissal of Plaintiff Byrnes due to her allegedly disruptive behavior was clearly disciplinary in nature. JCCC maintains that it was an academic dismissal, and thus subject to the academic appeals process, however, this conflicts with JCCC's own admission that it was a dismissal based on allegedly disruptive behavior. JCCC's reliance on the academic dismissal process is clearly erroneous, as the Supreme Court determined in *Horowitz*, namely that proceedings in which a student is punished for disruptive behavior are disciplinary in nature.

In *State ex rel. Yarber v. McHenry*, the Missouri Supreme Court interpreted *Horowitz* to mean that "if the sanction relates to the academic evaluation of the student, it is academic rather

6

than disciplinary. Conversely, if the sanction does not bear upon the academic evaluation of the student, it is disciplinary rather than academic." 915 S.W.2d 325, 329 (Mo. 1995). The Missouri court went on to determine that dismissal stemming from a school attendance policy violation was disciplinary in nature because it had no bearing on the Plaintiff's academic success. Similarly, the conduct for which Plaintiff Byrnes was dismissed was non-academic. Plaintiff Byrnes had been in good academic standing at JCCC for the duration of her enrollment at the College. She has never been on academic probation, nor has she ever failed a class. Thus, the only conclusion that can be made is that Plaintiff Byrnes' dismissal was disciplinary in nature.

However, even in the unlikely event that the Court finds that Plaintiff Byrnes' dismissal was academic in nature, her due process rights were still violated because of the arbitrary and capricious nature of her dismissal. Plaintiff Byrnes was dismissed prior to any notice given or an opportunity to defend her actions. She was provided with no clear reason for her dismissal and not provided with adequate information as to an appeals process. As the Supreme Court observed in *Board of Curators v. Horowitz,* a "number of lower courts have implied in dictum that academic dismissals from state institutions can be enjoined if 'shown to be clearly arbitrary or capricious.'" 435 U.S. at 91 (citations omitted).

### C.  Plaintiff Was Dismissed From JCCC Without Due Process

In *Goss,* the Supreme Court stated that suspensions of students for disciplinary reasons have a sufficient resemblance to traditional judicial and administrative fact-finding that call for a "hearing" before the relevant school authority. While recognizing that school authorities must be afforded the necessary tools to maintain discipline, the Court concluded: "[i]t would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his

side of the story in order to make sure that an injustice is not done. *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 88-89 (1978) (citing *Goss*, 419 U.S. 565, 580 (1975)).

"By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved." *Gardenhire v. Chalmers*, 326 F. Supp. 1200, 1203 (D. Kan. 1971) (*citing Dixon v. Alabama State Board of Education*, 294 F.2d at 158, 159 (5th Cir. 1961). Much like *Gardenhire v. Chalmers*, in the case at bar, the only process that was afforded Plaintiff Byrnes was that of a "right of review." Instead of affording Plaintiff Byrnes her due process before dismissing her, she was dismissed first, and then allowed to appeal. "Suffice it to say, in the light of near unanimous authorities, the 'right of review' (or a hearing only upon request), does not serve to protect the right of the student to fundamental fairness in this type of proceeding. One does not have to be a supplicant for allowance of a constitutional right." *Gardenhire v. Chalmers*, 326 F. Supp. 1200, 1204 (D. Kan. 1971).

## II. Plaintiff Will Suffer Irreparable Injury Unless the Injunction Issues

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Irreparable harm is not harm that is merely serious or substantial. The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal citations omitted). An "irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience

8

harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). The 10th Circuit in *Heideman* indicated that there may be an irreparable harm if a Court's refusal to issue an injunction would make it "difficult or impossible [for the party seeking injunction] to resume their activities or restore the status quo ante in the event they prevail." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003).

Doyle Byrnes has been an enrolled student at JCCC since 2006. Up until the point of her dismissal, she was always in good academic standing. Upon completion of the Spring 2011 semester, Ms. Byrnes will graduate from JCCC Nursing with her nursing degree. Ms. Byrnes is engaged to be married, with plans to move to Virginia in the summer of 2011 with her husband where she will begin her career as a nurse. By dismissing Ms. Byrnes with only a month left in the Fall 2010 term, JCCC will effectively preclude Ms. Byrnes from following through with her life plans. She will not be able to start her career as a nurse and will not be able to complete her nursing courses at JCCC in the fall of 2011 because she will be living in Virginia. She will have to apply to another nursing school in Virginia and hope that her nursing credits from JCCC transfer. If the academic dismissal is upheld, she might be prevented from being accepted into another nursing school. A preliminary injunction must issue requiring Ms. Byrnes' reinstatement. Without immediate action, Ms. Byrnes will not be allowed to graduate in May, which will make it impossible to restore the status quo when she prevails in this action.

### III. The Threatened Injury Outweighs Any Damage the Proposed Injunction May Cause

'The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Gardenhire v. Chalmers*, 326 F. Supp. 1200, 1203 (D. Kan. 1971). Accordingly, as was discussed in *Cafeteria and Restaurant Workers' Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' *Gardenhire v. Chalmers*,326 F. Supp. 1200, 1203 (citing *Cafeteria and Restaurant Workers' Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 895 (1961)).

Here, the loss that Plaintiff Byrnes will suffer if the injunction does not issue should be considered "grievous." If she is not reinstated, her dismissal will effectively preclude her from pursuing a career as a nurse. By failing to adequately provide Ms. Byrnes with the due process she deserved, JCCC has ended her career before it had a chance to begin.

Furthermore, the proposed injunction will not cause any serious harm to the Defendants. Plaintiff Byrnes is asking to be reinstated as a student at JCCC Nursing retroactive to November, 11, 2010, the day which she was wrongfully dismissed. Her reinstatement would involve being allowed to make up all missed clinical coursework. An instructor would simply have to observe Plaintiff Byrnes making up her missed clinical coursework, and, as the instructors at JCCC Nursing have already prepared the exams, the only burden on JCCC Nursing would be to administer the same to Plaintiff Byrnes. JCCC is simply facing a minor inconvenience, while

10

Plaintiff Byrnes is facing life-altering consequences. Balancing the harms clearly weighs in favor of Plaintiff Byrnes.

### IV. Issuance of a Temporary Restraining Order and Preliminary Injunction Will Serve The Public Interest

There simply exists no adverse public interest which would prevent the issuance of an injunction. Plaintiff Byrnes' dismissal from JCCC Nursing had nothing to do with her competence as a nurse, as she has always been in good academic standing. Furthermore, an agent of JCCC expressly and impliedly authorized the conduct for which she was ultimately dismissed.

In fact, in the present case, failure to issue the injunction reinstating Ms. Byrnes ultimately would be adverse to public interest. It is no secret that the country is facing a nursing shortage. In fact, according to a July 2008 report published by the American Association of Colleges of Nursing (AACN), "more than 19,400 RN vacancies exist in long-term care settings. These vacancies, coupled with an additional 116,000 open positions in hospitals reported by the American Hospital Association in July 2007, bring the total RN vacancies in the U.S. to more than 135,000. This translates into a national RN vacancy rate of 8.1%."[1] Simply put, it is in the public interest to graduate as many qualified nurses as possible. Reinstatement of Ms. Byrnes would further serve that public interest.

### V. Plaintiff Byrnes Should Not Be Required to Post a Bond

Federal courts construe Federal Rule of Civil Procedure 65 to permit a trial court to require no bond where the nonmoving party fails to demonstrate any injury. "[T]he trial judge has wide discretion in the manner of requiring security and if there is an absence of proof

---

[1] *See* AACN Fact Sheet (Dec. 2010) *available at* http://www.aacn.nche.edu/media/factsheets/nursingshortage.htm.

11

showing the likelihood of harm, certainly no bond is necessary." *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964).

Here, there is no indication that Defendants will suffer any cognizable harm during the time that the temporary restraining order and preliminary injunction are in effect. Because the Defendants will not be harmed, Plaintiff Byrnes should not be required to post a bond.

## CONCLUSION

When balancing the immediate and irreparable harm to Plaintiff Byrnes caused by her wrongful dismissal against any minor harm that JCCC may face in reinstating her to full student status, it is clear that the scale clearly weighs in favor of granting the temporary restraining order and preliminary injunction. Plaintiff Byrnes is facing life-altering repercussions due to JCCC's wanton disregard of her civil liberties. If she is not immediately reinstated, she will lose her opportunity to become a nurse. As she is only one semester short of graduation, and firmly planning to move to Virginia, failure to grant her equitable relief will result in permanent, irreparable harm.

Any damages claimed by JCCC can be classified as an inconvenience. The inconvenience of simply re-administering the clinicals and exams that Plaintiff Byrnes missed during her dismissal pales in comparison to the damage that Plaintiff Byrnes faces if the temporary restraining order and the preliminary injunction do not issue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Byrnes prays for this Court's issuance of a temporary restraining order and preliminary injunction:

    A. Declaring that Defendants' actions are in violation of the Fourteenth Amendment to the United States Constitution;

B. Ordering Defendants to : (i) reinstate Plaintiff to full student status, retroactive to November 10, 2010; (ii) permit her to take her final examinations on the subjects in which she was enrolled at the time of her dismissal; and (iii) permit her to make up her clinical coursewokr under proper supervision.

C. And for any other and further relief as this court deems equitable and just.

        Respectfully submitted,

        COHEN McNEILE & PAPPAS, P.C.

        /s/ Clifford A. Cohen_____
        Clifford A. Cohen -            KS #08681
        4601 College Blvd., Suite 200
        Leawood, Kansas  66211
        (913) 491-4050; Fax (913) 491-3059
        ccohen@cmplaw.net
        ATTORNEYS FOR PLAINTIFF