## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DOYLE BYRNES**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10-2690-EFM-DJW |
| | ) | |
| **JOHNSON COUNTY COMMUNITY** | ) | |
| **COLLEGE**; **DR. CLARISSA CRAIG** | ) | |
| in her individual and official capacities; | ) | |
| **MS. JEANNE WALSH** in her individual | ) | |
| and official capacities; **MS. AMBER** | ) | |
| **DELPHIA** in her individual and official | ) | |
| capacities; **DR. MARILYN** | ) | |
| **RHINEHART** in her individual and | ) | |
| official capacities; **DR. DENNIS DAY** | ) | |
| in his individual  and official capacities | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction against Defendants Johnson County Community College ("JCCC") and five college officials: Dr. Clarissa Craig ("Craig"), Ms. Jeanne Walsh ("Walsh"), Ms. Amber Delphia ("Delphia"), Dr. Marilyn Rhinehart ("Rhinehart") and Dr. Dennis Day ("Day").

An evidentiary hearing was held on January 6, 2011, after which the Court entered its injunction order from the bench. Plaintiff Byrnes appeared in person and by her counsel, Clifford A. Cohen of Cohen McNeile & Pappas P.C., of Leawood Kansas. Defendant JCCC appeared by its President, Dr. Terry Calaway. Defendants Craig, Walsh, Delphia, Rhinehart and Day appeared in person. All defendants also appeared through their counsel, Mark A. Ferguson, and Thomas E. Hammond, of Gates, Shields & Ferguson P.A., of Overland Park, Kansas.

At the conclusion of the hearing, the Court GRANTED the motion for injunction from the bench.  This Memorandum is filed to set forth the specifics of the injunction and the Court's rationale for its ruling.

## I.      Background[1]

Byrnes was enrolled as a nursing student at JCCC, and on November 10, 2010, she attended a clinical course on obstetrics and gynecology at Olathe Medical Center in Olathe, Kansas under the instruction and supervision of Defendant Amber Delphia. Byrnes and three other nursing students (witnesses Chrystie North, Jamie Vande Brake and Danielle Thompson) obtained permission from Delphia to photograph themselves examining a placenta specimen. Delphia consented to the students' request to photograph the organ on the condition that no identifying marks be present in the photograph.  According to Plaintiff, while in the locker room following the clinical experience, Delphia asked the students what they intended to do with the photographs. A student responded that they were going to post them on Facebook, after which Delphia replied, "Oh, you girls."

Byrnes and the other three nursing students subsequently posted their individual photographs to the social media website, "Facebook." As a result of their actions, Plaintiff and the other three nursing students were dismissed from the Nursing School at JCCC on November 11, 2010.

Plaintiff contends that Defendants violated her due process rights by failing to provide her with the proper disciplinary appeals process and by failing to afford her with an impartial

---

[1] The Background is compiled from testimony provided during the evidentiary hearings, as well as Plaintiff's pleadings and proposed preliminary injunction order.

arbiter to preside over her petition for review.

## II.      Preliminary Injunction Standard

As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[2] The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case."[3]  Whether to grant or deny a preliminary injunction rests within the discretion of the district court.[4]

To be entitled to a preliminary injunction, the moving party must demonstrate: (1) that the movant will suffer irreparable injury unless the injunction issues; (2) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; (3) that the injunction, if issued, would not be adverse to the public interest; and (4) that there is a substantial likelihood that the movant will eventually prevail on the merits.[5]  The Tenth Circuit has adopted a liberal standard for the "probability of success" requirement where the movant prevails on the other factors.[6]  In such case, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate

---

[2] *Schrier v Univ. of Colo.*, 427 F. 3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v Visa USA Inc*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

[3] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F. 2d 351, 355 (10th Cir. 1986).

[4] *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290  (1940); *Three Ten Enters., Inc. v. Berrenberg Enters., Inc.,* 1994 WL 243773, at *1 (D. Kan. May 13, 1994).

[5] *Schrier*, 427 F.3d at 1258; *see also Resolution Trust Corp. v. Cruce*, 783 F. Supp. 1309, 1310-11 (D. Kan. 1992); 11A Wright & Miller, §2948.

[6] *Lundgrin v. Claytor*, 619 F. 2d 61, 63 (10th Cir. 1980).

investigation."[7]

The purpose of a preliminary injunction is to preserve the status quo pending the outcome of the case.[8]  The relief sought here is injunctive, and is not as Defendants assert mandatory. Mandatory injunctions, which are disfavored, affirmatively require the respondent to act in a particular way.  Defendants contend that because Plaintiff seeks an order re-admitting her to the nursing school, she seeks a mandatory injunction.  Defendants are in error.  The "status quo" which a preliminary injunction seeks to preserve is the last uncontested status between the parties which preceded the controversy.[9]  Plaintiff's request is that the status quo of her enrollment in the JCCC nursing school, which was the last uncontested status between the parties before this controversy, be preserved and restored.  That request is for injunctive relief.

Plaintiff has moved for a Temporary Restraining Order and a Preliminary Injunction. Federal Rule of Civil Procedure 65 provides that a court may issue a temporary restraining order without notice to the adverse party upon certain conditions, and that such order expires no later than 14 days after entry.  A preliminary injunction may issue, however, only after notice to the adverse party.  The Rule does not mandate the short shelf life of a preliminary injunction that it does for a temporary restraining order.  The principal difference between the two relates to the *ex parte* nature of the injunction hearing.  Because Defendants had notice, filed lengthy written arguments and authorities regarding their position, were present at the hearing, and produced testimony, the Court ruled that this hearing was therefore for a preliminary injunction, and not for the shorter-lived temporary restraining order.

---

[7] *Id. (Citations omitted).*

[8] *Tri-State Generation,* 805 F. 2d at 355.

[9] *Schrier,* 427 F. 3d at 1260.

### III.     Predicate Findings and Conclusions

As Defendants correctly note, higher educational institutions are given broad discretion by the courts with respect to their academic decisions.  However, Defendants are in error in characterizing this incident as an "academic" rather than a "disciplinary" proceeding.  To adopt the position of Defendants' witness would be to label any decision that involved an educational institution as therefore "academic," and effectively to eliminate the disciplinary category.  The law is clear that academic decisions which are given deference are those related to matters such as the academic grade given a student for course work.  This matter, involving alleged violations of codes of conduct, is clearly disciplinary, and the broader discretion afforded educational institutions does not apply.[10]

Defendants argue that Plaintiff has no constitutionally protected property interest in her post-secondary education, but the law is clearly otherwise.[11]

No patient privacy rights were implicated in this photo.  Delphia ensured that all patient identifying marks which might be captured by a photograph be removed before the photo was taken.  No viewer of the photo could have any way of knowing from what patient the placenta had been taken; indeed, the nursing students testifying at trial indicated that they did not know themselves.  Defendants, and particularly Jeanne Walsh, seemed very concerned that this placenta was "fresh," i.e, that it was recently taken from a patient.  This is irrelevant.  There was no way any viewer of the photo could know whether it was "fresh" or retained from some time past for clinical or educational purposes.  Even if it were not "fresh," if it could be identified to a patient, privacy implications would still have attached.  It was not identifiable to a patient, so its

---

[10] *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85-86 (1978).

[11] *Gaspar v. Bruton*, 513 F. 2d 843 (10th Cir. 1975).

recent origin was irrelevant.  Walsh testified to some attenuated theory involving the number of births that day at Olathe Medical Center (allegedly only one), which would enable the patient to be identified.  The theory is too remote and speculative.  A viewer could not know that the placenta was, allegedly, "fresh" nor could the viewer know that the day at issue had only one birth (thus, only one placenta).  Delphia appropriately required the nursing students to remove patient identifiers before the photo was taken, and in their absence no privacy results were implicated.

Neither defendant JCCC's Nursing Student Code of Conduct nor any other code of conduct relating to JCCC and/or its nursing school regulates student photography of classroom or clinical events, nor prohibits the transmittal of photographs to others, including through social media such as Facebook.  The "violation" which the Plaintiff and other students committed was not of a published code of conduct, but of the sense of propriety of Defendants, particularly of Walsh.  Such standards are unclear, unpublished, and unfair to require students to comply with.

Delphia denied knowing that the students intended to publish the photographs on Facebook, and did not recall the conversations all of the students testified to at the hearing, whereupon being told of such plans, she replied simply "Oh, you girls."  It is unnecessary to decide whether that conversation actually occurred, because each of the expelled students believed it had.  Contrary to Defendants' arguments that a response of "Oh, you girls" is not an express grant of permission, any reasonable participant in that conversation would have been entitled to assume that their plans were not objectionable.  Furthermore, photos are taken to be viewed.  When Delphia granted permission to take the photos, it was unreasonable to assume that they would not be viewed.  If the photos were objectionable, to say nothing of objectionable to the point warranting expulsion from the nursing program, then it would not have mattered

whether the photos were viewed on Facebook or elsewhere.  By giving the students permission to take the photos, which Delphia admitted, it was reasonable to anticipate that the photos would be shown to others.

The appeal process provided to Plaintiff was in no way a fair and unbiased opportunity for the students to fully present their case before a neutral and unbiased arbitrator.  In the students' meeting with Walsh, they were shut down when they attempted to make the very relevant argument that they had express permission from  Delphia, JCCC's representative there. Before their appeal to Clarissa Craig, she had already publicly announced their guilt in a meeting with the entire nursing school (although she did not specifically name them, it is beyond doubt that her comments and judgment were about them) – before meeting with them on their appeal. The students were advised by the college that there was no reason to take the third level of appeal available, because its outcome was a foregone conclusion.  So, the Court finds that the appeal process denied Plaintiff procedural due process.  Further, the law does not require that they exhaust administrative appeals before filing this lawsuit,[12] and that is particularly true where the appeal process was neither fair nor unbiased.

The Court specifically rejects Defendants' arguments that the students' letters of apology are admissions of guilt.  The letters are more generalized apologies than they are specific admissions of violations of published codes of conduct, but the Court does not need to make that analysis.  It is clear that the letters were written in an attempt to resolve amicably the dispute with the college, and are inadmissible as confessions under the well-known and long standing general rule barring offers of settlement.

---

[12] *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982).

Although not argued at the hearing, Defendants' brief also asserted that they were entitled to qualified immunity.  Qualified immunity relates to Defendants' liability for civil damages. The relief requested here is for a preliminary injunction, and does not seek civil damages.

Further, to prevail on a qualified immunity defense, the Defendants have to show that their conduct was objectively reasonable in light of clearly established law.[13]  It was clear from the testimony that Delphia was the agent of JCCC when she admittedly gave the students permission to take the placenta photographs. The Court finds the testimony of Byrnes and the other three students credible with regard to Delphia making no objection to their intentions to post the photographs on Facebook. Further, the Court finds that in spite of Delphia's statement to the contrary, they believed that she had made the statement, "oh, you girls" upon learning that the photos would be posted to Facebook. The established legal protections, substantive and procedural, available to the nursing students have been summarized above.  Therefore, the Court cannot conclude that the Defendants' conduct was objectively reasonable in light of established law.

## IV.  Order

In light of the foregoing factual findings and legal conclusions relating to this matter, the Court now analyzes the standards for granting a Preliminary Injunction.

### A.  Irreparable Harm

For an injury to constitute irreparable harm, it must be "certain, great, actual and not theoretical."[14]  There must be a significant risk of harm that cannot be remedied by an award of

---

[13] *Salehpoor v. Shahinpoor*, 358 F. 3d 782, 785 (10th Cir. 2004).

[14] *Schrier*, 427 F. 3d at 1267 (quoting *Heideman v. S. Salt Lake City*, 348 F. 3d 1182, 1189 (10th Cir. 2003); *see also Butler v. Nat'l Collegiate Athletic Ass'n*, 2006 WL 2398683, at *4 (D. Kan. Aug.15, 2006) (stating that the harm claimed cannot be speculative).

monetary damages because of difficulty or uncertainty in their proof or calculation.[15] The burden is on the party seeking the preliminary injunction to demonstrate that "the injury complained of is of such imminence that there is a clear and present need for equitable relief."[16]

Proving irreparable harm is the most important factor for obtaining a preliminary injunction.[17] Byrnes' testimony that she would suffer irreparable injury unless the injunction issues included, among other things, that she paid for classes for which she neither received credit nor a refund. She was expelled from a school which is publicly funded and in which she has a constitutional right to attend. She expressed concern about whether she would be admitted back to JCCC or a nursing school in Virginia, the state to which she intends to relocate after her scheduled August, 2011 wedding.

JCCC, to the contrary, offered evidence that under certain unspecified requirements, Byrnes might possibly be readmitted to the nursing program for the Fall of 2011. However, the evidence of possible re-admission was more convincing in relation to the other three students, but not convincing as applied to Byrnes.

Byrnes' harm, if not immediately restored to her prior status as a nursing student at JCCC, is certain. Based on her dismissal, her certain loss of credit for the Fall 2010 term and absence from the nursing school for the Spring 2011 term irreparably harms Byrnes by imposing a minimum of a one year delay in her nursing education and therefore her opportunity to earn a living as a registered nurse. However, a more grievous irreparable harm is threatened by the possibility that her dismissal from JCCC for misconduct would prevent her from being accepted

---

[15] *Flying Cross Check, L.L.C. v. Central Hockey League, Inc.,* 153 F. Supp. 2d 1253, 1259 (D. Kan. 2001)(citing *Equifax Services, Inc. v. Hitz,* 905 F. 2d 1355, 1361 (10th Cir. 1990)).

[16] *Heideman*, 348 F. 3d at 1189 *(Citations and quotations omitted) (emphasis in original).*

[17] *Hill's Pet Nutrition, Inc., v. Nutro Prods., Inc.,* 258 F. Supp. 2d 1197, 1205 (D. Kan. 2003).

at another nursing school. Accordingly, her career as a nurse is threatened. The Court, therefore, finds that Byrnes has met her burden in proving an imminent threat of irreparable harm.

**B.  Balance of Hardships**

Having determined the harm that Byrnes will suffer if the preliminary injunction is not issued, the Court must next weigh that harm against any harm to the Defendants should the preliminary injunction be granted.[18]  As the foregoing discussion of irreparable harm illustrates, the harm to Byrnes in the absence of a preliminary injunction would be great.

On the contrary, there is very little evidence of any proposed injury to the Defendants in readmitting Plaintiff Byrnes to the nursing program. In fact, Defendants have put forth no evidence of any injury they might suffer from a granting of the requested injunction which this Court finds to be a credible harm. Balancing the irreparable harm facing the Plaintiff against the lack of potential harm to the defendant, it is clear that this factor weighs in favor of granting the injunction.

**C.  Public Interest**

While this Court recognizes and understands the significance of not only patient confidentiality, but also professionalism by health care providers, in this case the prevailing public interest being protected by the issuance of an injunction is the interest that students in publicly supported schools not be held to vague standards that are interpreted in arbitrary and unpredictable ways that ultimately hinge on the personal interpretations, feelings, and personal morals of those who are imposing them. Because the Court has previously found that no patient privacy interests were implicated in the photos, the balancing of interests clearly favor Plaintiff.

---

[18] *Heideman*, 348 F. 3d at 1190 (citing *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001)).

**D.  Likelihood of Success on the Merits**

As the Court's foregoing Predicate Findings and Conclusions discussion demonstrates, the Plaintiff's likelihood of prevailing on the merits of her claims are high.

**E.  Bond Requirement**

Bonds are meant to cover financial losses that may occur by the imposition of an injunction. Those losses are separate from the legal fees and other litigation expenses involved in defending an action. There has been no showing by Defendants whatsoever of any proposed financial loss, and therefore the Court orders that no bond will be required.

**IT IS ACCORDINGLY ORDERED** that Plaintiff Doyle Byrnes' Motion for Preliminary Injunction is hereby **GRANTED,** and Defendants are enjoined from enforcing Byrnes' dismissal from the Nursing Program at Johnson County Community College. Defendants are ordered to immediately reinstate Byrnes to full nursing student status, retroactive to November 10, 2010, the status quo prior to the present controversy. Further, Defendants are ordered to permit Byrnes to take her final examinations on the subjects in which she was enrolled at the time of her dismissal and to readmit Byrnes immediately for the Spring 2011 academic semester, which commences January 19, 2011. Finally, it is ordered that each of the Defendants will avoid any retributive action against Byrnes.

**IT IS SO ORDERED.**

Dated this 19th day of January, 2011.

_____/s  Eric F. Melgren_____
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE